# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JOHN W. LANGLEY,**

    **Plaintiff,**

**v.**                                                           **No. 21-cv-0178 DHU/SMV**

**KILOLO KIJAKAZI,** [1]
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiff's Motion to Remand or Reverse Agency Decision [Doc. 28] and Memorandum in Support [Doc. 29], both filed on October 27, 2021. The Commissioner responded on February 28, 2022. [Doc. 33]. Plaintiff replied on April 4, 2022. [Doc. 36]. The presiding judge has referred this matter to me for proposed findings and a recommended disposition. [Doc. 42]. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in evaluating the testimony of both Plaintiff and his[2] father. Additionally, the ALJ's reasons for rejecting the father's testimony are not supported by substantial evidence.

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

[2] The record contains evidence that Plaintiff identifies as non-binary and utilizes the pronouns "they/them." *E.g.*, Tr. 756. Plaintiff's counsel, however, utilizes male pronouns for Plaintiff. *E.g.*, [Doc. 29] at 2. The Court follows counsel's lead.

The Motion should be granted and the case remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[4] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on April 17, 2018. Tr. 15. He alleged a disability-onset date of February 11, 2018, but he later amended it to June 5, 2016. *Id.* His claims were denied initially and on reconsideration. *Id.* ALJ Luke Liter held a hearing on February 25, 2020, from Tulsa, Oklahoma. Tr. 15, 36. Plaintiff appeared by videoconference from Santa Fe, New Mexico, with his attorney. Tr. 15, 36. The ALJ heard testimony from Plaintiff, Plaintiff's father, and vocational expert ("VE") Marsha Heald. Tr. 15, 36.

The ALJ issued his unfavorable decision on March 30, 2020. Tr. 30. He found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. Tr. 17. At step one, he found that Plaintiff had not engaged in substantial gainful activity since June 5, 2016, the amended alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: panic disorder, attention-deficit/hyperactivity disorder, and major depressive disorder. Tr. 18.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 18–19. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 19–28. The ALJ found that Plaintiff could perform unskilled work at all exertional levels but limited interaction with others. Tr. 68–69. Specifically, he found that Plaintiff:

4

> has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] can understand, remember, and carry out simple repetitive tasks. [Plaintiff] could tolerate superficial (brief and cursory) contact with coworkers and supervisors. Public contact should not be required for successful completion of the job duties, but there could be incidental contact with the public.

Tr. 19.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 28. Accordingly, he went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 29. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claims. Tr. 29–30. The Appeals Council denied review on February 3, 2021. Tr. 1–5. Plaintiff timely filed the instant action on February 27, 2021. [Doc. 1].

## **Discussion**

The ALJ failed to apply the correct legal standards in evaluating the statements of Plaintiff and his father, and therefore, the Court should grant Plaintiff's Motion to Remand or Reverse [Docs. 28, 29]. Further, the reasons provided for rejecting the father's testimony were not supported by substantial evidence. However, Plaintiff's challenges to the description of the RFC and the evaluation of Dr. Sorenson's and Dr. King's opinions are not persuasive. Finally, I decline to pass on Plaintiff's challenge under *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), as it may be made moot by reevaluation of Plaintiff's and his father's statements.

### I. The ALJ failed to apply the correct legal standard in evaluating Plaintiff's self-reported symptoms.

In evaluating the symptoms reported by a claimant, the ALJ must utilize a two-step process. Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *5–10. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the reported symptoms. *Id.* at *5. Second, the ALJ evaluates the "intensity and persistence" of the symptoms, such as pain, and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *9. In considering the "intensity, persistence, and limiting effects" of a claimant's symptoms, the ALJ examines "the entire case record." *Id.* at *9–10. For example, the ALJ should consider the claimant's:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 18–19; *see* 20 C.F.R. § 1529(c)(3)(i)–(vii) (2011).

If the claimant's "statements about the intensity, persistence, and limiting effects" of his symptoms are consistent with the evidence of record, the ALJ will determine that the symptoms are "more likely to reduce [his] capacities to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, at *20. If they are not consistent, the ALJ will find that symptoms are "less likely

6

to reduce [his] capacities to perform work-related activities." *Id.*  Moreover, the ALJ will consider the claimant's attempts to seek medical treatment for his symptoms, whether he has followed the recommended treatment, as well as the possible reasons for the frequency or extent of treatment and/or lack of treatment compliance.  *Id.* at *22–23.

The ALJ's decision must contain more than conclusory findings.  *Id.* at *26.  A recitation of the factors is not adequate.  *Id.*  "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*

Here, the ALJ applied the requisite two-step process outlined in SSR 16-3p.  He found, first, that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Tr. 22.  Then, second, he found Plaintiff's self-reported symptoms to be inconsistent with the evidence.  Tr. 22, 28.  The ALJ explained that Plaintiff's treatment history was "not indicative of someone with his alleged level of impairment."  Tr. 22.  Specifically, the ALJ found that Plaintiff's self-reported symptoms "lacked consistency" with the evidence because Plaintiff had no in-patient hospitalizations for psychiatric treatment and made "no urgent emergency room visits for emotional crises."  Tr. 28.  The ALJ was explicit that Plaintiff's self-reports about his symptoms were not persuasive because if Plaintiff's symptoms had been as severe as he claimed, "he reasonably would have been expected to require more intensive palliative treatment."  Tr. 28.

I agree with Plaintiff that remand is required.  First, it is not at all evident why the ALJ found that Plaintiff's level of treatment was not consistent his reported symptoms.  I understand

that the ALJ found that Plaintiff could not have been disabled within the meaning of the Act[5] if he had no in-patient treatment or emergency-department visits, but the connection between them is not evident. More to the point, however, the ALJ's reasons for rejecting Plaintiff's self-reported symptoms show that he did not apply the correct legal standard.

The ALJ committed reversible error when he failed to make any findings about the "possible reasons [Plaintiff did] not . . . seek treatment consistent with the degree of his . . . complaints." SSR 16-3, 2016 SSR LEXIS 4, at *23.

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. *We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints.* We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not . . . sought treatment in a manner consistent with his or her complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:
> - *An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.*
> - An individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau.
> - An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.
> - An individual may not be able to afford treatment and may not have access to free or low-cost medical services.
> - A medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual.
> - An individual's symptoms may not be severe enough to prompt him or her to seek treatment, or the symptoms may be relieved with over the counter medications.

---

[5] "[Plaintiff]'s allegations and subjective complaints lack consistency with the evidence to the extent that they purport to describe a condition of disability for Social Security purposes." Tr. 28.

> . . . . .
>
> The above examples illustrate possible reasons an individual may not have pursued treatment. However, we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. *We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms*.

*Id.* at 23–25 (emphases added). The ALJ was required to consider and make explicit findings on why Plaintiff sought a level of treatment (that the ALJ found to be) inconsistent with disability. Nevertheless, the ALJ did not inquire about the reasons for the level of treatment Plaintiff underwent, *see* Tr. 41–63, nor did the ALJ make any findings on the matter, *see* Tr. 15–30.

This error is harmful and reversible because a reasonable adjudicator, applying the correct legal standard, could have found that Plaintiff's level of treatment (assuming that it was inconsistent with his self-reported symptoms) was attributable, for example, to his parents' significant support, structure, and stability. *See Allen*, 357 F.3d at 1145 (holding an error to be harmless in a social security case when the reviewing court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). *See* Tr. 332–39 and Tr. 57–63 (father's testimony about Plaintiff's symptoms, including that before moving in with parents, father found Plaintiff disoriented and living in squalor and that Plaintiff requires significant logistical support to function even minimally). Remand is warranted for reevaluation of Plaintiff's self-reported symptoms.

## II. The ALJ failed to apply the correct legal standard in evaluating the testimony of Plaintiff's father.

In weighing the testimony of a family member, the ALJ must determine how consistent the family member's testimony is with the claimant's self-reported symptoms and with the evidence in the record. SSR 16-3p, 2016 SSR LEXIS 4, at *17–18. Social Security Ruling 16-3p explains, in pertinent part:

> **c. Non-Medical Sources**
>
> Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include public and private agencies, other practitioners, educational personnel, *non-medical sources such as family* and friends, and agency personnel. We will consider any statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by telephone. The adjudicator will consider any personal observations of the individual *in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.*

SSR 16-3p, 2016 SSR LEXIS 4, at *17–18.

Here, the ALJ rejected Plaintiff's father's statements because they were lay testimony, because the father was "potentially" influenced by family loyalty, and because the statements did not outweigh the medical evidence. Tr. 28. In pertinent part, the ALJ explained that he had considered the father's statements:

> [B]ut they are lay opinions based upon casual observation, rather than objective medical examination and testing. Further, they are potentially influenced by loyalties of family. They certainly do not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff]'s impairments limit her [sic] functional abilities. Ultimately, these statements are not persuasive for the same reasons set forth above in finding [Plaintiff]'s allegations to be less than wholly consistent with the evidence.

10

Tr. 28. Plaintiff argues that the ALJ improperly rejected the testimony of his father. [Doc. 29] at 13. He argues that the ALJ's reasons are "insufficient to satisfy the legal standard." *Id.* I agree.

The ALJ failed to apply the correct legal standard in evaluating Plaintiff's father's testimony because he did not examine how consistent it was with Plaintiff's own statements. Instead, the ALJ applied a standard not contemplated by SSR 16-3p, namely whether the father might "potentially" have a reason to give unreliable statements. The failure to apply the correct legal standard, on its own, warrants remand.

Further, remand is warranted on an additional, independent basis. The ALJ's reasons for rejecting the father's testimony are not supported by substantial evidence. First, I have found no evidence that could been seen as supporting a finding that Plaintiff's father was influenced by family loyalty to give unreliable testimony. Nor was any such evidence apparent from the ALJ's decision. Nor did Defendant point to any. I find that the familial relationship alone cannot support a finding that Plaintiff's father's testimony is unreliable. *See generally Panas v. Comm'r, SSA*, 775 F. App'x 430, 440 (10th Cir. 2019) ("[F]amily loyalty is generally not a valid reason to find a witness's statement not credible.").

Similarly, the ALJ found that the father's testimony was not outweighed by the "accumulated medical evidence." Tr. 28. This finding is not supported by substantial evidence. I cannot identify what medical evidence the ALJ found to be inconsistent with the father's statements. The ALJ did not explain his rationale, and it is not evident from the decision. *See* Tr. 22–28. Remand is warranted for reevaluation of Plaintiff's father's statements.

III. Plaintiff fails to show reversible error in the "description" of the RFC.

Plaintiff argues that the RFC assessment was "insufficiently described." [Doc. 29] at 11. Usually, an RFC assessment is found in an enumerated paragraph in bold font in an ALJ's decision. In this case, it was neither enumerated nor bolded. Nevertheless, the RFC assessment is present. Tr. 19. Plaintiff fails to show any reversible error in the description of the RFC.

IV. Plaintiff fails to show reversible error in
the evaluation of the opinions of Dr. Sorenson and Dr. King.

Plaintiff urges that the case merits remand because the ALJ failed to "reconcile" the prior administrative findings made by Richard Sorenson, Ph.D., and Edith King, Ph.D. [Doc. 29] at 11–13. Plaintiff argues that the ALJ mischaracterized Dr. Sorenson's opinion. The ALJ had adopted the opinion of Dr. King over the opinion of Dr. Sorenson on the explicit understanding that Dr. King's opinion was more restrictive, as it limited Plaintiff's contact with the public, while Dr. Sorenson's opinion did not. Tr. 27. However, Plaintiff argues that the ALJ mischaracterized Dr. Sorenson's opinion, and in fact, Dr. Sorenson's opinion was the more restrictive opinion. As Plaintiff's sees it, the restrictions in Dr. Sorenson's opinion would have rendered him disabled. [Doc. 29] at 12 ("Such 'moderate' impairments will generally result in too many off[-]task periods to sustain employment."). At bottom, Plaintiff argues that the ALJ "ignore[d]" the important differences in the opinions of Drs. Sorenson and King and erred by failing to "reconcile" them. *Id.* at 11–13. I have thoroughly considered the errors alleged by Plaintiff in light of the authorities he cites. First, I am not persuaded that the limitations assessed by Dr. Sorenson—even taking them as Plaintiff urges—would render him disabled. Plaintiff cites no authority for his argument that Dr. Sorenson's opinion amounted to being off-task too frequently to work. *See id.* at 12. Nor

am I aware of any such authority. Similarly, the authorities cited by Plaintiff did not require the ALJ to "reconcile" the opinions at issue. *Id.* at 11–13. Plaintiff fails to show reversible error in the evaluation of the opinions of Dr. Sorenson and Dr. King.

## Conclusion

The Court should grant Plaintiff's Motion to Remand or Reverse [Docs. 28, 29], because the ALJ failed to apply the correct legal standards in weighing the testimony of Plaintiff and his father. Additionally, the ALJ's reasons for rejecting the father's testimony are not supported by substantial evidence. Remand is warranted for reevaluation of Plaintiff's and his father's statements. Plaintiff fails to show reversible error in the description of the RFC and in the weighing of Dr. Sorenson's and Dr. King's opinions. I decline to pass on Plaintiff's *Trimiar* challenge because it may become moot when the testimony is reevaluated.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Remand or Reverse Agency Decision [Doc. 28]  be **GRANTED**, the Commissioner's final decision be reversed, and this case be remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**